LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN (111070)
CHRISTOPHER P. SEEFER (201197)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
PatC@lerachlaw.com
ChrisS@lerachlaw.com
    – and –
WILLIAM S. LERACH (68581)
DARREN J. ROBBINS (168593)
655 WEST BROADWAY, SUITE 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
BillL@lerachlaw.com
DarrenR@lerachlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re LEAPFROG ENTERPRISES, INC. SECURITIES LITIGATION | ) No. C-03-05421-RMW ) ) <u>CLASS ACTION</u> ) |
| This Document Relates To:<br><br>ALL ACTIONS. | ) ALICE CUPPLES AND WILLIAM ) SULLIVAN'S OPPOSITION TO THE ) MOTION TO APPOINT PARNASSUS AS ) LEAD PLAINTIFF AND TO APPROVE ) PARNASSUS' SELECTION OF LEAD ) COUNSEL |
| | DATE:           November 18, 2005<br>TIME:           9:00 a.m.<br>COURTROOM:  The Honorable<br>                        Ronald M. Whyte |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................................................1

II.   ARGUMENT ..........................................................................................................................4

     A.   By Vigorously Prosecuting the Case and Conferring Substantial Benefits to the Class, Cupples, Sullivan and Their Counsel Have Shown They Are the "Most Capable of Representing the Interests of the Class" and Should Continue to Serve as Lead Plaintiff and Lead Counsel ..........................................4

     B.   This Court Has Indicated that Cupples and Sullivan Should Continue to Prosecute the Case as Lead Plaintiff................................................................................4

     C.   Hicks Agrees that Lead Plaintiff and Lead Counsel Have Conferred Substantial Benefits to the Class and that They Should Continue to Represent the Class .................................................................................................................5

     D.   Parnassus Has Shown It Will Not Adequately Represent the Interests of the Class by Asking This Court to Remove Lead Plaintiff and Lead Counsel Who Have Conferred Substantial Benefits to the Class by Vigorously Prosecuting the Case ...............................................................................6

     E.   Lead Plaintiff and Lead Counsel Have Continued Their Investigation and Have Discovered Additional Information Since the Filing of the Consolidated Complaint that Will Benefit the Class ............................................10

III.   CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

Page

**CASES**

*Greenberg v. Bear Stearns & Co.*,
 80 F. Supp. 2d 65 (E.D.N.Y. 2000) ................................................................................8

*In re Cavanaugh*,
 306 F.3d 726 (9th Cir. 2002) ............................................................................... *passim*

*In re Lucent Techs., Inc. Sec. Litig.*,
 221 F. Supp. 2d 472 (D.N.J. 2001) ...............................................................2, 3, 9, 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 182 F.R.D. 42 (S.D.N.Y. 1998) ......................................................................................7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 191 F.R.D. 369 (S.D.N.Y. 2000) ....................................................................................8

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) .........................................................................................5

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
 §78u-4(a)(3) .....................................................................................................................3
 §78u-4(a)(3)(i) ..................................................................................................... *passim*
 §78u-4(a)(3)(ii) .................................................................................................... *passim*

H.R. Conf. Rep. No. 104-369 (1995) .........................................................................................8

Federal Rules of Civil Procedure
 Rule 23 ................................................................................................................ *passim*

I.     INTRODUCTION

On March 31, 2005, this Court determined Alice Cupples and William Sullivan ("Cupples and Sullivan" or "lead plaintiff") were the "most capable of adequately representing the interests of the class" under the Private Securities Litigation Reform Act ("PSLRA") (15 U.S.C. §78u-4(a)(3)(B)(i)-(ii)) and *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) and appointed them as lead plaintiff. Since that appointment they have conferred substantial benefits to the class by conducting an extensive investigation, preparing a detailed Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("Consolidated Complaint") and issuing numerous document preservation subpoenas in order to assure critical evidence is maintained. In fact, there has been no showing – or even an allegation – that Cupples and Sullivan do not continue to meet the adequacy requirements of Rule 23. Given the unique circumstances of this case it would disrupt and delay the case, and impose excessive, unnecessary and additional costs – all to the detriment of the class – by appointing a new lead plaintiff who would have to spend months learning information already developed.

Despite all of this, the Parnassus Fund and the Parnassus Equity Income Fund (collectively, "Parnassus") have asked this Court to remove lead plaintiff and lead counsel, to appoint Parnassus as the sole lead plaintiff in this case and to approve Parnassus' selection of new lawyers as lead counsel on the grounds that Parnassus has suffered larger losses in the later period of the case than Cupples and Sullivan. But neither the PSLRA nor *Cavanaugh* addresses the current situation. In *Cavanaugh,* the Ninth Circuit set out the three-step process for the ***initial*** selection of a lead plaintiff. *Cavanaugh*, 306 F.3d at 729-31. It did not address the issue here – whether a court-appointed lead plaintiff who met (and continues to meet) the adequacy requirements of Rule 23 and has conferred substantial benefits to the class by vigorously prosecuting the case should be removed when the court has ordered a ***second*** lead plaintiff selection process. Here, the Court has already complied with *Cavanaugh* and the PSLRA by appointing Cupples and Sullivan as lead plaintiff and approving their selection of counsel as lead counsel. The issue is whether that should change.

As explained herein, lead plaintiff and lead counsel should continue to prosecute the case because (1) they have already conferred substantial benefits to the class by vigorously prosecuting

the case, (2) they have developed unparalleled knowledge and expertise of the facts of this case, (3) there has been no showing or even an allegation that they do not continue to meet the adequacy requirements of Rule 23, and (4) it would disrupt and delay the case and impose additional, excessive and unnecessary costs – all to the detriment of the class – by appointing a new lead plaintiff who would have to spend months learning information already developed.

Indeed, the district court in *In re Lucent Techs., Inc. Sec. Litig.,* 221 F. Supp. 2d 472 (D.N.J. 2001), faced with virtually identical facts as those present here, rejected Parnassus' request to remove the originally appointed lead plaintiff and to appoint it as the sole lead plaintiff for a separate case or a subclass of the consolidated action. Instead, the district court ordered the originally appointed lead plaintiff to continue to prosecute the consolidated action and appointed Parnassus as a co-lead plaintiff.

Lead plaintiff believes this Court has recognized the uniqueness of the current circumstances when it indicated that removal of Cupples and Sullivan was not required – or warranted – by stating it would consider pragmatic suggestions for allocating lead plaintiff responsibilities advanced by the parties during this second lead plaintiff selection process, including appointing Parnassus as co-lead plaintiff for the entire case or for only the post February 10, 2004 portion of the case. July 27, 2005 Order at 1-3. That is precisely what the court did in *Lucent.* 221 F. Supp. 2d at 482-83, 488.

Mr. Hicks also believes Cupples and Sullivan should continue to serve as lead plaintiff. He joined in the motion filed by Cupples and Sullivan and recognized that "lead plaintiff and lead counsel have conferred substantial benefits to the class by conducting an extensive investigation, preparing the consolidated complaint and by issuing numerous document preservation subpoenas." Memorandum of Points and Authorities of Ted Hicks in Support of Alice Cupples and William Sullivan's Motion to Continue Serving as Lead Plaintiff and to Have Their Selection of Counsel Continue to Serve as Lead Counsel ("Hicks' Mem.") at 2. In addition, Hicks recognized that given the unique circumstances of this case, the overriding purpose of the PSLRA – appointing the member of the class "most capable of adequately representing the interests of class members" – can only be served by reappointing Cupples and Sullivan as lead plaintiff. *Id.*

1  Previously, Parnassus also recognized that Cupples and Sullivan should continue as lead plaintiff. As this Court noted in its July 27, 2005 Order, Parnassus initially suggested that Cupples and Sullivan remain as lead plaintiff and that it be appointed co-lead plaintiff for the entire class period or for the post February 10, 2004 portion of the class period. July 27, 2005 Order at 1-3. In addition, although Parnassus seeks to take over the entire case in its motion to be appointed lead plaintiff, Parnassus did not dispute the substantial benefits conferred to the class by lead plaintiff and lead counsel or that the class would be harmed by the delay and additional costs that will result if lead plaintiff and lead counsel are removed.

Now, ignoring the reasonable result achieved in *Lucent*, Parnassus has abandoned its suggestions for allocating lead plaintiff responsibilities that this Court, Cupples and Sullivan, Mr. Hicks and Parnassus itself have recognized as pragmatic solutions to the unique circumstances of this case. Parnassus now asks this Court to remove lead plaintiff and lead counsel and to appoint it as the sole lead plaintiff and to approve its selection of new lawyers as lead counsel because its losses are greater. But this Court should not ignore the posture of this case. The overriding purpose of the PSLRA is to appoint a lead plaintiff that is the most capable of adequately representing the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(i). This Court already ruled Cupples and Sullivan were the most capable of adequately representing the interests of the class. Their vigorous prosecution of the case over the past two years confirms they should continue to serve as lead plaintiff. By asking this Court to appoint it as lead plaintiff and to approve its selection of new lawyers for the class – and to displace lead plaintiff and lead counsel who have vigorously prosecuted the case and conferred substantial benefits to the class – Parnassus seems to be ignoring the interests of the class and putting its own interests first. This attempt should be rejected just as the *Lucent* court rejected it in 2001.

Accordingly, Cupples and Sullivan respectfully request this Court to issue an order that confirms their appointment as lead plaintiff and their selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as lead counsel.

II. ARGUMENT

  **A. By Vigorously Prosecuting the Case and Conferring Substantial Benefits to the Class, Cupples, Sullivan and Their Counsel Have Shown They Are the "Most Capable of Representing the Interests of the Class" and Should Continue to Serve as Lead Plaintiff and Lead Counsel**

  In their opening brief, Cupples and Sullivan explained that they are the most capable of representing the interests of the class and should be reappointed lead plaintiff. Cupples and Sullivan should be reappointed because (1) this Court ruled they were the most capable of representing the class when it appointed them lead plaintiff on March 31, 2005, (2) they have already conferred substantial benefits to the class by vigorously prosecuting the case, (3) there has been no showing – or even an allegation – that they no longer meet the adequacy requirements of Rule 23, (4) no other movant has the knowledge developed by Cupples and Sullivan through their extensive investigation and preparation of the Consolidated Complaint.

  In addition, disrupting the litigation by appointing a new lead plaintiff whose chosen counsel will have to spend months learning information already developed would be highly prejudicial to the class and would impose further delay and excessive, unnecessary and additional costs. In light of the foregoing, any movant that would ask this Court to remove Cupples and Sullivan as lead plaintiff, and appoint it as lead plaintiff and to approve its selection of new lawyers for the class would demonstrate that it is not the most adequate plaintiff to continue the prosecution of the case.

  **B. This Court Has Indicated that Cupples and Sullivan Should Continue to Prosecute the Case as Lead Plaintiff**

  Lead plaintiff and lead counsel believe this Court has already recognized that it would be ill advised to remove and replace them given the unique circumstances of this case and that neither the PSLRA nor *Cavanaugh* require it. In its July 27, 2005 Order, this Court stated that it would consider pragmatic suggestions for allocating lead plaintiff responsibilities advanced by the parties during the lead plaintiff selection process, including suggestions initially made by Parnassus to (1) appoint Parnassus as co-lead plaintiff and its counsel as co-lead counsel or (2) appoint Parnassus and Cupples and Sullivan as lead plaintiffs for their respective portions of the class period. July 27, 2005 Order at 1-3.

This Court issued the July 27, 2005 Order after Cupples and Sullivan explained in their motion for reconsideration that they expanded the class period alleged in the Consolidated Complaint and pled the case in more detail as a result of their extensive investigation, and that the amendments were to be expected of lead plaintiffs vigorously prosecuting a case. *Staton v. Boeing Co.*, 327 F.3d 938, 957, 960 (9th Cir. 2003) (Rule 23(a)(4) requires "representative plaintiffs and their counsel [to] prosecute the action vigorously," "class counsel ultimately owe their fiduciary responsibility to the class as a whole"). Indeed, no one else has the knowledge of the facts developed by lead plaintiff and lead counsel, and it would penalize interested and diligent plaintiffs who had vigorously prosecuted the case if the reward for that work is removal from the case.

### C. Hicks Agrees that Lead Plaintiff and Lead Counsel Have Conferred Substantial Benefits to the Class and that They Should Continue to Represent the Class

Mr. Hicks joined in the motion filed by Cupples and Sullivan and also believes they should continue to serve as lead plaintiff and that Lerach Coughlin should continue to serve as lead counsel. In his joinder, Mr. Hicks expressly stated that (1) his counsel had reviewed the Consolidated Complaint and was satisfied it more than adequately represents the interests of all class members, (2) his counsel believed lead plaintiff and lead counsel had conferred substantial benefits to the class by conducting an extensive investigation, preparing the Consolidated Complaint and issuing numerous document preservation subpoenas, (3) no other potential movant has the knowledge that lead plaintiff and lead counsel have already developed, and (4) disrupting the litigation by appointing a new lead plaintiff whose chosen counsel will have to spend months learning information already developed would be highly prejudicial to the class and would impose further delay and excessive, unnecessary and additional costs.

Like Cupples and Sullivan, Mr. Hicks recognizes that the expertise developed by lead plaintiff and lead counsel and the benefits of maintaining a continuity of representation must be given more weight than another movant's losses when determining what member of the class is the "most capable of adequately representing the interests of class members."

In addition, Hicks stated that it would be appropriate to appoint him as an ***additional*** lead plaintiff if the Court determined that additional lead plaintiffs should be appointed. Hicks' Mem. at

2. As this Court noted in its July 27, 2005 Order, appointing additional lead plaintiffs may be a pragmatic solution to allocating lead plaintiff responsibilities. July 27, 2005 Order at 1-3. As Mr. Hicks' motion makes clear, however, ***replacing*** lead plaintiff and lead counsel is not a pragmatic alternative and would actually harm the class.

### D. Parnassus Has Shown It Will Not Adequately Represent the Interests of the Class by Asking This Court to Remove Lead Plaintiff and Lead Counsel Who Have Conferred Substantial Benefits to the Class by Vigorously Prosecuting the Case

In its July 27, 2005 Order, this Court noted that Parnassus initially made several pragmatic suggestions for allocating lead plaintiff responsibilities that would result in Cupples and Sullivan continuing to serve as lead plaintiff and Parnassus being appointed co-lead plaintiff for the entire class period or for just the post February 10, 2004 portion of the class period. July 27, 2005 Order at 1-3. Further, in its opening motion, Parnassus did not dispute that lead plaintiff and lead counsel have vigorously prosecuted the case and conferred substantial benefits to the class by conducting an extensive investigation, issuing numerous document preservation subpoenas and preparing the Consolidated Complaint. Although not expressly addressed in its opening brief, Parnassus implicitly acknowledged that lead plaintiff and lead counsel have vigorously prosecuted the case and conferred substantial benefits to the class by recognizing that the Consolidated Complaint prepared and filed by lead plaintiff and lead counsel will be the operative complaint in this matter. Memorandum in Support of Motion for Appointment of Lead Plaintiffs, and for Approval of Selection of Lead Counsel at 2-3.[1]

But Parnassus has now abandoned the suggestions for allocating lead plaintiff responsibilities that this Court, Cupples and Sullivan, Mr. Hicks and Parnassus itself have recognized as pragmatic solutions to the unique circumstances of this case. Instead, Parnassus now asks this Court to remove lead plaintiff and lead counsel and to replace them with Parnassus and its lawyers. Parnassus

---

[1] In its certification, Parnassus stated that it reviewed the Consolidated Complaint prepared by lead plaintiff and lead counsel that was filed on June 17, 2005.

1  contends it is the presumptively most adequate plaintiff because it is the movant with the largest
2  financial interest in the relief sought and because it satisfies the requirements of Rule 23.

3  Neither the PSLRA nor *Cavanaugh* requires a court to remove and replace a court-appointed lead plaintiff when a subsequent lead plaintiff selection process has been ordered by the court and a competing movant claims larger losses.  In *Cavanaugh,* the Ninth Circuit explained the PSLRA's three-step process for the ***initial*** selection of lead plaintiff. *Cavanaugh,* 306 F.3d at 729-31.  But the Ninth Circuit did not address the situation present in this case, *i.e.,* whether a court-appointed lead plaintiff who continues to meet the adequacy requirements of Rule 23 and has conferred substantial benefits to the class by vigorously prosecuting the case should be removed when the court has ordered a ***subsequent*** lead plaintiff selection process.  In fact, this Court indicated that *Cavanaugh* does not require the removal of Cupples and Sullivan as lead plaintiff when it stated it would consider the possibility of appointing Parnassus lead plaintiff for only the post February 10, 2004 portion of the class period and the other pragmatic suggestions advanced by the parties.  July 27, 2005 Order at 3.  Further, removing Cupples and Sullivan would be improper because there has been no showing or even an allegation that they no longer satisfy the adequacy requirements of Rule 23. *Cavanaugh,* 306 F.3d at 741 (lead plaintiff can be removed "only after a finding that they are inadequate").

In addition to not being required by the PSLRA or *Cavanaugh,* it would actually harm the class to remove lead plaintiff and lead counsel and to appoint Parnassus as lead plaintiff simply because Parnassus has incurred larger losses.  The Court has already appointed Cupples and Sullivan as lead plaintiff and approved their selection of lead counsel.  Lead plaintiff and lead counsel have been vigorously prosecuting the case for almost two years and have developed unparalleled knowledge and expertise.  At this stage of the litigation, the overriding statutory purpose of the PSLRA – determining what member or members of the plaintiff class are "most capable of adequately representing the interests of class members" – requires an analysis that goes beyond simple arithmetical comparisons.  *See, e.g.*, *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the

class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions.").

Moreover, the fact that Parnassus is willing to remove lead plaintiff and lead counsel demonstrates that it does meet the adequacy requirements of Rule 23 and is therefore not the presumptively most adequate plaintiff. *Cavanaugh*, 306 F.3d at 730 (presumptive lead plaintiff is "'the one who has the largest financial interest in the relief sought by the class'" **and** "'otherwise satisfies the requirements of Rule 23'") (citation omitted). As explained in Cupples and Sullivan's opening brief, and in Mr. Hicks' joinder, any movant that would ask this Court to appoint it as lead plaintiff and to approve its selection of new lawyers – and to displace lead plaintiff and lead counsel who have vigorously prosecuted the case and conferred substantial benefits to the class – would demonstrate that it is not the most adequate plaintiff to continue the prosecution of the case.

At this stage of the litigation, appointing a new lead plaintiff whose chosen counsel will have to spend months learning information already developed would unavoidably cause further delay and increase costs to the class. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 381 (S.D.N.Y. 2000) ("[T]he substitution of a new Lead Plaintiff at this stage of the litigation is likely to cause dislocation and delay. Designating another law [firm] as Lead Counsel either in addition to the existing Lead Counsel or in substitution of any of them, would seem to promise more delay and unjustifiable additional expense . . . ."); *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 70 (E.D.N.Y. 2000) ("To disturb the litigation by appointing a subclass of lead plaintiffs absent any convincing evidence that they would otherwise be prejudiced, would undoubtedly create further delays and costs in this litigation."). To permit this would run counter to one of the PSLRA's stated purposes to "minimize costs." H.R. Conf. Rep. No. 104-369, at 32 (1995).

The Ninth Circuit has stated that the presumptive lead plaintiff has the "responsibility to select counsel who he believes will best serve his own interests **and the interests of the class**." *Cavanaugh,* 306 F.3d at 734 (emphasis added); *see also* Senate Report No. 104-98, at 691 (1995) ("the Committee does not intend to disturb the court's discretion under existing law to approve or disapprove the lead plaintiff's choice of counsel **when necessary to protect the interests of the plaintiff class**") (emphasis added). Moreover, the Ninth Circuit has stated that the choice of counsel

may be relevant in determining whether the presumptive lead plaintiff meets the typicality and adequacy requirements of Rule 23. *Cavanaugh*, 306 F.3d at 732. Parnassus knows that removing lead plaintiff and lead counsel will harm the class for the reasons described above. Thus, by asking this Court to remove and replace lead plaintiff and lead counsel Parnassus has shown that it is not acting in the best interests of the class and, consequently, that it does not meet the adequacy requirements of Rule 23.

In *Lucent*, 221 F. Supp. 2d 472, Parnassus and its counsel tried unsuccessfully to prevent the court-appointed lead plaintiff and lead counsel from prosecuting a portion of the class period alleged in the consolidated complaint. In *Lucent*, lead plaintiff and lead counsel were appointed on April 27, 2000 and filed a consolidated complaint on November 3, 2000 that alleged a class period of October 26, 1999 to January 6, 2000 ("Lucent I"). *Lucent*, 221 F. Supp. 2d at 478. After the consolidated complaint was filed Lucent disclosed that it had improperly recognized almost $1 billion of revenue in 4Q00. *Id.* As a result, numerous complaints were filed that alleged a class period of July 20, 2000 to December 21, 2000 ("Lucent II") and lead plaintiff filed an amended consolidated complaint that extended the class period to December 21, 2000. *Lucent*, 221 F. Supp. 2d at 478.

Parnassus and its counsel asked the court to keep the Lucent I and Lucent II cases separate (based on their assertion that Lucent II involved different allegations, different class periods and different defendants) and to appoint a separate lead plaintiff and lead counsel for Lucent II. *Lucent*, 221 F. Supp. 2d at 478. The court denied that request because it found that both actions involved common questions of fact and law and that the interests of economy and efficiency counseled against severance. *Id.* at 482. Thus, the originally appointed lead plaintiff continued to serve as lead plaintiff in the consolidated action that encompassed the Lucent I and Lucent II actions.

In addition, Parnassus and its counsel asked the court to establish a subclass to represent the Lucent II plaintiffs based on their assertion that there was a conflict between the Lucent I and Lucent II actions because the Lucent II case was stronger. *Lucent*, 221 F. Supp. 2d at 482-83. The court noted that a conflict had to be significant enough to preclude the lead plaintiff from adequately representing a single, consolidated class and denied the request to establish a subclass because the purported conflict was based on an unsupported, and therefore "merely theoretical," assertion that

Lucent II was stronger. *Lucent*, 221 F. Supp. 2d at 483   Indeed, the court noted that Parnassus' counsel did not know how easy or difficult it would be to prove the Lucent II claims, or for the Lucent I plaintiffs to prove theirs, because they had not done any investigation into the facts of either the Lucent I allegations or the allegations in their own complaints. *Lucent*, 221 F. Supp. 2d at 483.

The court did, however, appoint Parnassus as ***co-lead plaintiff*** because (1) it appeared additional representation might benefit the class and provide flexibility, if needed, in the future, (2) Parnassus had the largest losses of the competing Lucent II movants, and (3) the presumption of adequacy was not challenged. *Lucent*, 221 F. Supp. 2d at 483, 488.

The circumstances in this case are even more compelling than those in *Lucent* that the court found insufficient to preclude the lead plaintiff from adequately representing a single consolidated class. Indeed, in this case, unlike *Lucent*, Parnassus does not contend there is any conflict that would preclude Cupples and Sullivan from adequately representing the class. Parnassus does not dispute that lead plaintiff and lead counsel have adequately represented the class by vigorously prosecuting the case or that lead plaintiff and lead counsel will continue to do so. Mr. Hicks believes lead plaintiff and lead counsel have adequately represented the class and that they should continue to prosecute the case. Thus, there is no basis to remove lead plaintiff and lead counsel and, as explained above, doing so would harm the class.

Cupples, Sullivan, and Mr. Hicks – and until now, Parnassus – each advanced the suggestions this Court found to be pragmatic for allocating lead plaintiff responsibilities, including (1) reappointing lead plaintiff and reapproving lead plaintiff's selection of Lerach Coughlin as lead counsel and (2) appointing additional lead plaintiffs and lead counsel if the Court believes it would benefit the class. Parnassus has abandoned its previous suggestion to be appointed co-lead plaintiff and now seeks to take over the entire case. For the reasons noted above, such action would hurt the class and demonstrates Parnassus does not meet the adequacy requirements of Rule 23.

### E. Lead Plaintiff and Lead Counsel Have Continued Their Investigation and Have Discovered Additional Information Since the Filing of the Consolidated Complaint that Will Benefit the Class

Lead plaintiff and lead counsel have continued their investigation and have discovered additional information showing defendants knew their statements about Mattel Inc.'s ("Mattel")

competing PowerTouch product and LeapFrog Enterprises, Inc.'s ("LeapFrog" or the "Company") distribution and supply chain operations were false and misleading. As alleged in the Consolidated Complaint, defendants' trial testimony and pleadings filed in the patent infringement suit against Mattel show they knew (1) LeapFrog was losing million of dollars in sales to the PowerTouch when they represented to investors that lost sales was only a potential risk, and (2) LeapFrog failed to ship four million LeapPads in 3Q03 due to the distribution and supply chain problems when they represented to investors that there were "no impediments" to meeting the Company's guidance for 3Q03 and that LeapFrog was "ready to keep our customers in stock as we move forward in this critical third period." *See, e.g.*, ¶¶44-126, 140, 143, 145, 149.[2]

Pleadings filed in the patent infringement suit subsequent to the filing of the Consolidated Complaint further confirm defendants' knowledge. After the jury was unable to reach a verdict prompting the court to declare a mistrial, LeapFrog and Mattel filed post trial briefs, proposed findings of facts and responses to the other party's two filings that disclosed additional evidence showing defendants knew their statements were materially false and misleading.

For example, defendant James Curley's deposition testimony – which Mattel cited in its proposed findings of fact and conclusions of law – confirm the allegations that the defendants knew their representations in July 2003 that there were no impediments to reporting sales and earnings in line with the Company's reiterated guidance were false and misleading. ¶¶44-60, 140. Specifically, Curley testified that (1) LeapFrog was unable to ship the ordered amounts of product to either Target or Toys R Us, (2) LeapFrog lost 1.2 million orders to Target in 3Q03 because it was unable to ship, and (3) LeapFrog lost 2.8 million orders to Toys R Us in 3Q03 because of product unavailability. Curley's testimony confirms the allegations of lost sales that are based on the testimony of Timothy Bender during the patent infringement trial, information provided by several former LeapFrog employees and Michael Wood's admissions during the Company's October 22, 2003 conference call. ¶¶53-55.

---

[2] All paragraph references ("¶") are to the Consolidated Complaint filed June 17, 2005, unless otherwise indicated.

In addition, testimony shows that the distribution and supply chain problems continued in 2003 and 2004 when the defendants represented that the distribution and supply chain problems that caused LeapFrog to report disappointing 3Q03 results had been fixed and that LeapFrog's operating results *could* suffer *if* the Company was unable to meet tight shipping schedules and fill retail orders or *if* the Company failed to develop and maintain management systems and resources sufficient to manage growth.  ¶¶61-86, 154, 158, 160, 166-67, 171, 177, 180, 183, 186, 190.  Specifically, defendants Curley and Bender testified that LeapFrog began actively searching for a supply chain expert after the Company missed product shipments in 2004 due to supply chain problems.  Curley testified that problems with the implementation of a new distribution center and new supply chain system in 2004 caused interruptions in shipments and untimely shipments and that as a result LeapFrog's top four customers – Target, Toys R Us, Wal-Mart and K-Mart – complained they were not getting shipments when they wanted them.  Curley also testified that LeapFrog delayed the installation of supply chain software until 2004 and incurred millions of dollars in expenses to (1) hire 100 additional people to staff the distribution center, (2) hire outside consultants to help LeapFrog develop a longer term solution to fix the distribution and supply chain problems and (3) implement and install the supply chain software.

Curley's deposition testimony corroborates the allegations defendants knew the distribution and supply chain problems continued in 2003 and 2004 that were based on information provided by several former LeapFrog employees, the suit between LeapFrog and Commodity Logistics West, Inc., and the defendants' admissions after the Class Period.  ¶¶61-86.

In short, lead plaintiff and lead counsel have continued to adequately represent the class as a whole by discovering additional information through their continuing investigation that will substantially benefit the class because it confirms defendants knowingly or recklessly made numerous false and misleading representations and omissions about the Company's distribution and supply chain operations and the impact of the PowerTouch on LeapFrog's sales.

### III. CONCLUSION

Based on the foregoing, Cupples and Sullivan respectfully request that this Court confirm their appointment as lead plaintiff pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 and their selection of Lerach Coughlin as lead counsel.

DATED: October 28, 2005

Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN
CHRISTOPHER P. SEEFER

/s/
───────────────────────────
CHRISTOPHER P. SEEFER

100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
655 WEST BROADWAY, SUITE 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

T:\CasesSF\LeapFrog\BRF00025407.doc

DECLARATION OF SERVICE BY FACSIMILE
PURSUANT TO NORTHERN DISTRICT LOCAL RULE 23-2(c)(2)

I, the undersigned, declare:

1. That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2. That on October 28, 2005, declarant served by facsimile the **ALICE CUPPLES AND WILLIAM SULLIVAN'S OPPOSITION TO THE MOTION TO APPOINT PARNASSUS AS LEAD PLAINTIFF AND TO APPROVE PARNASSUS' SELECTION OF LEAD COUNSEL** to the parties listed on the attached Service List and this document was forwarded to the following designated Internet site at:

http://securities.lerachlaw.com/

3. That there is a regular communication by facsimile between the place of origin and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of October, 2005, at San Francisco, California.

/s/
CAROLYN BURR

LEAPFROG (LEAD)
Service List - 10/27/2005  (03-0393)
Page 1 of 3

**Counsel For Defendant(s)**

Boris Feldman
Leo P. Cunningham
Daniel W. Turbow
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA  94304-1050
   650/493-9300
   650/493-6811 (Fax)

**Counsel For Plaintiff(s)**

Todd S. Collins
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103
   215/875-3000
   215/875-4604 (Fax)

Kurt B. Olsen
Klafter & Olsen LLP
2121 K Street, N.W., Suite 800
Washington, DC  20037
   202/261-3553
   240/683-8349 (Fax)

Samuel H. Rudman
David A. Rosenfeld
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
200 Broadhollow Road, Suite 406
Melville, NY  11747
   631/367-7100
   631/367-1173 (Fax)

Patrick J. Coughlin
Christopher P. Seefer
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111-5238
   415/288-4545
   415/288-4534 (Fax)

LEAPFROG (LEAD)
Service List - 10/27/2005  (03-0393)
Page 2 of  3

William S. Lerach
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
   619/231-1058
   619/231-7423 (Fax)

Arthur L. Shingler III
Scott + Scott, LLC
401 B Street, Suite 307
San Diego, CA  92101
   619/233-4565
   619/233-0508 (Fax)

David R. Scott
Neil  Rothstein
Scott + Scott, LLC
108 Norwich Avenue
Colchester, CT  06415
   860/537-5537
   860/537-4432 (Fax)

**Courtesy Copy**

Joseph J. Tabacco, Jr.
Christopher T. Heffelfinger
Berman DeValerio Pease Tabacco Burt & Pucillo
425 California St., Suite 2025
San Francisco, CA  94104-2205
   415/433-3200
   415/433-6382 (Fax)

Catherine A. Torell
Elizabeth  Berney
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
150 East 52nd Street, 13th Floor
New York, NY  10022
   212/838-7797
   212/838-7745 (Fax)

LEAPFROG (LEAD)
Service List - 10/27/2005  (03-0393)
Page 3 of 3

Steven J. Toll
Matthew K. Handley
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Ave., N.W., Suite 500
Washington, DC  20005-3964
   202/408-4600
   202/408-4699 (Fax)