1

2

3

4                                                    **E-FILED on** ___11/23/05___

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

12  In re LEAPFROG ENTERPRISES, INC.          No. C-03-05421 RMW
    SECURITIES LITIGATION
13                                            ORDER ON LEAD PLAINTIFF SELECTION

14                                            **[Re Docket Nos. 147, 152, 158]**

15  This Document Relates To:

16        ALL ACTIONS.

17

18          This is a consolidated securities class action against LeapFrog Enterprises, Inc. ("LeapFrog") and

19  several of its former and current executives ("the individual defendants").  Both (1) William Sullivan and

20  Alice Cupples ("the Cupples Movants") and (2) The Parnassus Fund and the Parnassus Equity Fund

21  ("Parnassus") move to be appointed lead plaintiff under the Private Securities Litigation Reform Act

22  ("PSLRA"), 15 U.S.C.A. § 78u-4(a).  LeapFrog and the individual defendants take no position on the

23  issue.  The court has considered the moving and responding papers and heard oral argument.  For the

24  reasons set forth below, the court appoints Parnassus lead plaintiff.

25                                    **I.  BACKGROUND**

26          On April 6, 2005 this court named the Cupples Movants lead plaintiffs in four related and

27  consolidated securities class actions alleging a class period of July 24, 2003 to February 10, 2004

28  ("*LeapFrog I*").  On April 25, 2005 Parnassus filed a securities class action against (1) LeapFrog, (2)

1   James P. Curley ("Curley"), LeapFrog's former Chief Financial Officer, and (3) Thomas Kalinske,

2   LeapFrog's Chief Executive Officer ("*LeapFrog II*").  Seefer Decl. Supp. Cupples Rep. ("Seefer Reply

3   Decl.") Ex. A ("Parnassus Compl.").  Parnassus purported to represent a class of investors who purchased

4   LeapFrog stock between February 11, 2004 to October 18, 2004.  *Id*. at ¶ 1.  Parnassus alleges that

5   LeapFrog (1) failed to disclose problems with its Information Technology ("IT") and supply chain, *id*. at ¶

6   39, (2) issued misleading fourth quarter 2003 results, *id*. at ¶ 40, (3) misrepresented future earning

7   capacity, *id*. at ¶¶ 41-43, and (4) gave false explanations for its first and second quarter 2004 losses, *id*. at

8   ¶¶ 44-60.  Parnassus claims to have lost nearly $10 million.  Heffelfinger Decl. Supp. Parnassus' Mot.

9   ("Heffelfinger Decl.") Ex. B.

10          On June 17, 2005 the Cupples Movants filed an amended complaint in *LeapFrog I*.  The amended

11  complaint alleges a new class period of July 24, 2003 to October 18, 2004.  First Amended Complaint

12  ("FAC") ¶ 1.  The FAC names as defendants (1) LeapFrog, (2) Curley, (3) Kalinske, (4) Michael Wood,

13  LeapFrog's former Chief Executive Officer, (5) Timothy Bender ("Bender"), LeapFrog's President,

14  Worldwide Consumer Group, (6) Paul Rioux ("Rioux"), LeapFrog's former Co-Vice Chairman of the

15  Board, (7) James Marggraff ("Marggraff"), LeapFrog's Executive Vice President, Worldwide Content, and

16  (8) Robert W. Lally ("Lallay"), LeapFrog's former Executive Vice President, Education Training Group and

17  President, SchoolHouse Division.  *Id*. at ¶¶ 14-21.  Spanning one hundred and thirty-five pages, the FAC

18  bolsters its claims with interviews with confidential witnesses and evidence from a patent infringement suit

19  that LeapFrog brought against Fisher-Price in 2003.  However, the Cupples Movants only claim to have

20  suffered about $36,000 in damages.  Seefer Decl. Supp. Cupples Movants' Mot. ("Seefer Decl.") Ex. B.

21          Before filing the FAC, the Cupples Movants moved to relate *LeapFrog I* and *LeapFrog II*.

22  Parnassus responded by seeking to enjoin the Cupples Movants from litigating *LeapFrog II*.  In the

23  alternative, Parnassus requested that the court make (1) the parties co-lead plaintiffs for the entire case or

24  (2) each party lead plaintiff for their respective original class periods.  On July 5, 2005 the court related

25  *LeapFrog I* and *LeapFrog II* but ordered the Cupples Movants to re-publish notice of their amended

26  complaint.  On July 27, 2005 the court denied Parnassus' motion as moot and explained that it would

27  consider pragmatic suggestions with respect to the lead plaintiff issue during the new lead plaintiff contest.

28

1   On August 3, 2005 the Cupples Movants re-published notice of the amended complaint.  Both parties

2   timely moved to be appointed lead plaintiff.[1]

3   ## II.  ANALYSIS

4   ### A.    The PSLRA

5       The PSLRA establishes a blueprint for a court to follow while selecting a lead plaintiff in a securities

6   class action:

7   > [T]he court shall consider any motion made by a purported class member . . . and shall
8   > appoint as lead plaintiff the member or members of the purported plaintiff class that the
    > court determines to be most capable of adequately representing the interests of class
9   > members . . . .
    > ***
10  > [T]he court shall adopt a presumption that the most adequate plaintiff in any private action
    > arising under this chapter is the person or group of persons that . . . in the determination
    > of the court, has the largest financial interest in the relief sought by the class; and . . .
11  > otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
    > ***
12  > The presumption . . . may be rebutted only upon proof by a member of the purported
    > plaintiff class that the presumptively most adequate plaintiff--
13  > (aa) will not fairly and adequately protect the interests of the class; or
    > (bb) is subject to unique defenses that render such plaintiff incapable of adequately
14  > representing the class.

15  15 U.S.C. § 78u-4(a)(3)(B).[2]

16      In the Ninth Circuit, courts must apply the statute in a strictly regimented manner.  First, the court

17  "compare[s] the financial stakes of the various plaintiffs and determine which one has the most to gain from

18  the lawsuit."  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  Second, the court determines

19  whether that plaintiff's pleadings and declarations reveal that he satisfies Rule 23's "typicality" and

20  "adequacy" requirements.  *Id*.  If not, the court makes the same inquiry about the plaintiff with the second-

21  largest financial stake in the litigation.  *Id*.  When the court finds a plaintiff who fulfills these criteria, "the

22  process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima

23  facie showing of typicality and adequacy."  *Id*.

24

25

26  [1]   Although no party has moved to consolidate the cases, this court's April 6, 2005 order automatically consolidates related cases for pretrial purposes.  *See* April 6, 2005 Order at 8:11-15.

27  [2]   The statute also requires the first plaintiff to file a complaint to post notice of the case "in a widely circulated national business-oriented publication or wire service."  15 U.S.C. § 78u-4(a)(3)(A).
28  This notice must state that "any member of the purported class may move the court to serve as lead plaintiff."  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

It is undisputed that Parnassus' alleged losses dwarf those of the Cupples Movants. Indeed, Parnassus claims to have suffered $10 million in damages, while the Cupples Movants allege losses of only $36,000. Thus, unless the Cupples Movants show that Parnassus is inadequate, the court cannot make them lead plaintiffs without subverting the PSLRA. Attempting to avoid this conclusion, the Cupples Movants cast their motion as one to "continue" serving as lead plaintiffs. They cite Judge Wallace's concurrence in *Cavanaugh* for the proposition that a "lead plaintiff can be removed '*only* after a finding that they are inadequate.'" Cupples Movants' Mot. at 3:12-13 (quoting *Cavanaugh*, 306 F.3d at 741 (Wallace, J., concurring) (emphasis in original). This argument lacks merit. Because this court ordered the Cupples Movants to re-publish notice of their amended complaint—thus triggering a new lead plaintiff selection process—they are no longer lead plaintiffs. Second, the Cupples Movants argue that "they have already conferred substantial benefits to the class through their vigorous prosecution of the case." *Id*. at 11:18-19. Indeed, over the last two years, the Cupples Movants have (1) filed a comprehensive amended complaint, (2) procured twenty-two document preservation subpoenas, and (3) developed an intimate knowledge of the case. Nevertheless, *Cavanaugh* squarely holds that such peripheral issues cannot be the basis for elevating a particular plaintiff to lead status. *See id*. at 732 (reversing district court's decision to appoint lead plaintiff based on fee arrangement with counsel because "the Reform Act provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy") (emphasis in original).

In addition, Parnassus satisfies both the "adequacy" and "typicality" requirements of Rule 23. "Under Rule 23's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Representatives are "adequate" unless they suffer from a conflict of interest with other class members or will not vigorously prosecute the case. *Id*. The court's primary concern with Parnassus is that Parnassus does not allege that it purchased any LeapFrog stock from July 24, 2003 to February 10, 2004. In its tentative ruling, the court suggested that Parnassus might lack standing to pursue claims on behalf of class members who did buy securities during this period. However, upon further reflection, this concern is unfounded. "[B]ecause the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is

inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004). Indeed, Article III standing and Rule 23 typicality are discrete inquiries. For example, in *In re VeriSign, Inc.*, 2005 WL 88969 *4 (N.D. Cal. 2005), defendants argued that the lead plaintiffs lacked standing to sue for alleged misrepresentations that occurred *after* they had purchased stock. The court rejected this argument, reasoning that the lead plaintiffs needed only to prove that they suffered *a* concrete injury because of defendants' wrongdoing, not *every* injury alleged by the class:

> Defendants' argument is a non sequitur. Their starting point is sound, but their conclusion is not. As a matter of logic, it is true that misrepresentations made after a person's purchase of stock could not possibly have induced that person to purchase that stock. However, as a matter of law, it does not follow that such a person 'cannot represent absent class members for such a claim' . . . [¶]. In the class action context, Article III standing simply requires that the class representatives satisfy standing individually. No more is required. 'Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense.' Once the class representatives individually satisfy standing, that is it: standing exists. 'The presence of individual standing is sufficient to confer the right to assert issues that are common to the class, speaking from the perspective of any standing requirements.'

*Id*. at *4-*5 (quoting Alba Conte & Herbert Newberg, Newberg on Class Actions § 2:5 (4th ed. 2002)); *see also Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) (holding that putative lead plaintiff satisfied "typicality requirement when his "claims are substantially similar, if not identical, to those of other class members who invested in . . . stock during the [c]lass [p]eriod"). Because Parnassus alleges that it relied on defendant's misrepresentations and purchased stock at an artificially inflated rate between February 11, 2004 to October 18, 2004, it appears to have standing to assert claims on behalf of the class. In addition, Parnassus' allegations share a common factual and legal thread with all class members: that defendants' misrepresentations artificially increased the price of LeapFrog stock during the class period. Accordingly, Parnassus' claims are "reasonably coextensive" with those of absent class members.

In its tentative ruling, the court also noted that Parnassus' lack of pre-February 11, 2004 stock purchases might create a conflict of interest with other class members. This concern also appears to be overstated. For one, in the securities class action context, courts rarely hold that the specter of such a conflict renders a class representative inadequate. *Cf. In re Seagate Tech. II Secs. Litig*., 843 F.Supp. 1341, 1365-66 (N.D. Cal. 1994) ("in the interest of accommodating the strong sentiments which favor the use of class actions in securities fraud cases, the court concludes that certain minimal levels of antagonism

1   [between class members] must be tolerated"); *In re Gemstar-TV Guide Intern., Inc. Secs. Litig.*, 209

2   F.R.D. 447, 453 (C.D. Cal. 2002) (rejecting argument that putative lead plaintiff suffered from disabling

3   conflict of interest despite the fact that it retained most of its stock during the class period while other class

4   members sold their shares).  Moreover, there is little risk that Parnassus will fail to prosecute the July 24,

5   2003 to February 11, 2004 class period diligently.  Like class members who purchased stock during that

6   time, Parnassus has a vested interest in proving that defendants' allegedly false statements artificially

7   increased the price of LeapFrog securities.  *See* Parnassus Compl. ¶ 7 ("LeapFrog's stock was artificially

8   inflated during the class period").  Presumably, Parnassus can recover for any amount it overpaid, even if

9   the misrepresentations occurred before it bought stock.  Therefore, because Parnassus' interests appear to

10  be reasonably aligned with all class members, it is an adequate lead plaintiff.

11          The Cupples Movants argue that "any movant that would ask the [c]ourt to . . . displace lead

12  plaintiff and lead counsel" despite their substantial work on the case "is not the most adequate plaintiff."

13  Cupples' Mot. at 19:3-9.  Of course, Parnassus could make a nearly-identical claim about the Cupples

14  Movants, who tried to subsume *LeapFrog II* by moving to relate the cases despite suffering a meager

15  fraction of Parnassus' losses.  In any event, the Cupples Movants cite no authority to suggest that

16  Parnassus' desire to be lead plaintiff renders it inadequate.

17          In addition, the Cupples Movants also claim that Parnassus is not adequate because, about a

18  decade ago, the Securities and Exchange Commission ordered it to cease and desist violating the securities

19  laws.  *See In re Parnassus Incs.,* Administrative Proceeding File No. 3-9317, 1998 SEC LEXIS 1877, at

20  *73-78 (Sept. 3, 1998).  The Cupples Movants cite *Shi v. SINA Corp.*, 2005 WL 1561438 (S.D. N.Y.

21  2005) for the proposition that "[n]umerous courts have rejected the appointment of persons [who] have

22  committed fraud or engaged in other forms of dishonesty as lead plaintiffs and class representatives."

23  Cupples' Reply at 15:8-11.  However, *Shi* held that an individual who had been convicted on felony fraud

24  charges was unsuitable to serve as lead plaintiff.  *See Shi*, 2005 WL 1561438 at *4.  Not only is Parnassus

25  an institution—and thus less amenable to a generalization about its "character"—but it was accused of a

26  lesser form of wrongdoing.  The court does not believe that the proceeding against Parnassus suggests that

27  it is unfit to be lead plaintiff.  Accordingly, the court appoints Parnassus lead plaintiff and approves

28  Parnassus' selection of counsel.

ORDER ON LEAD PLAINTIFF SELECTION—C-03-05421 RMW
DOH                                                      6

1       The court recognizes that counsel for the Cupples Movants may be entitled to more compensation

2   for their work to date than the usual amount counsel for unsuccessful putative lead plaintiffs receive.  That

3   issue, however, can be resolved at the time the fees are awarded should plaintiffs prevail or settle.  The

4   court also incorporates by reference the relevant aspects of pages 7-14 of its April 6, 2005 order as though

5   set forth herein.  In particular, the court grants Parnassus thirty days to file a consolidated amended

6   complaint.  Defendants shall have thirty days after Parnassus files its complaint to respond.  The parties may

7   alter either deadline by agreement.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**III.  ORDER**

2       1.      The court Parnassus lead plaintiff and approves Parnassus' choice of counsel.

3

4

5   DATED:          11/23/05                              /s/ Ronald M. Whyte

6                                                   RONALD M. WHYTE
                                                    United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Notice of this document has been electronically sent to:**

2    **Counsel for Plaintiffs:**

3    Patrick J. Coughlin          patc@mwbhl.com
     Darren J. Robbins            e_file_sd@lerachlaw.com
4    Gwendolyn R. Giblin          ggiblin@gbcslaw.com
     Marc S. Henzel               mhenzel182@aol.com
5    William S. Lerach            billl@lerachlaw.com
     Kimberly C. Epstein          kimcor@lerachlaw.com
6    Luke O Brooks                lukeb@mwbhl.com
     Christopher Paul Seefer      chriss@mwbhl.com
7    Solomon B. Cera              scera@gbcslaw.com
     David Avi Rosenfeld          drosenfeld@geller-rudman.com
8    Laurence D. King             lking@kaplanfox.com

9    **Counsel for Defendants:**

10   Daniel W. Turbow             dturbow@wsgr.com
     Kassra Powell Nassiri        knassiri@wsgr.com
11

     **Counsel for Movants:**
12
     Michael M. Goldberg         info@glancylaw.com
13   Darren J. Check             dcheck@sbclasslaw.com
     Linda M. Fong               lfong@kaplanfox.com
14
     **Counsel for Third Party Plaintiff:**
15
     Christopher Heffelfinger cheffelfinger@bermanesq.com
16

17   Counsel are responsible for distributing copies of this document to co-counsel that have not registered for
     e-filing under the court's CM/ECF program.
18

19   **Dated:**          11/23/05                          DOH
                                                  **Chambers of Judge Whyte**
20

21

22

23

24

25

26

27

28