**E-FILED on**    8/1/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re LEAPFROG ENTERPRISES, INC. SECURITIES LITIGATION,<br><br>This Document Relates To:<br>ALL ACTIONS. | No. C-03-05421 RMW<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br>**[Re Docket Nos. 194, 195]** |

    This securities class action suit was filed against defendant LeapFrog Enterprises, Inc. ("LeapFrog") and eight of LeapFrog's officers or former officers. LeapFrog moves to dismiss the plaintiff class's Amended Consolidated Class Action Complaint ("CAC") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The individually-named officers of LeapFrog filed a separate motion also seeking to dismiss the CAC for failure to state a claim. LeapFrog and the individual defendants join in each other's motion. Plaintiffs oppose the motions. Plaintiffs also seek leave to amend in the event defendants' motions are granted. On July 21, 2006 the court heard oral argument by counsel.

    The court expressed concern that the manner in which the 147-page consolidated amended complaint is arranged makes it difficult, if not impossible, to evaluate the pleadings and determine whether the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") are

1  met. At oral argument plaintiffs' counsel conceded that plaintiffs' securities fraud action is premised
2  on essentially two grounds: (1) alleged misstatements or omissions concerning competition from the
3  Mattel PowerTouch and (2) alleged misstatements or omissions concerning supply-chain and
4  distribution problems. Accordingly, the court inquired as to these two grounds: What specific
5  misrepresentation or omission was made and when; what facts existed at the time of a particular
6  statement that support the falsity of the statement; what facts are pled that show that at the time any
7  such misrepresentation or omission was made that the defendants knew that the misrepresentation or
8  omission was false?

      **A.**     **Misstatements or Omissions**

Plaintiffs maintained at oral argument that the pleadings in the complaint addressed with particularity the requirements of the PSLRA, citing to paragraphs in its amended consolidated class action complaint. With respect to the alleged misstatements or omissions regarding the PowerTouch, plaintiffs pointed the court to paragraphs 214, 232, 250, 256, 263, 217, 225, 226, 244, 253, and 262. With respect to alleged misstatements or omissions regarding supply-chain and distribution, plaintiffs pointed the court to these same paragraphs as the complaint does not segregate allegations based on the subject matter of the purported fraudulent statements.

For example, plaintiffs allege in paragraph 214 that the 10-Q "included false and misleading statements portraying actual problems which Defendants knew were occurring as mere 'risk factors' that 'could' occur." However, rather than specifically alleging what statement or statements are alleged to be false, paragraph 214 sets forth three pages mostly of excerpted text from LeapFrog's form 10-Q for its second quarter of 2003.[1] Even assuming every statement in paragraph 214 is

---

[1] Specifically, two of the subparagraphs appear to be statements regarding the PowerTouch. In one subparagraph LeapFrog discloses the markets in which it competes, notes that such markets are very competitive and that LeapFrog expects competition to increase in the future, discloses an example of such competition to be the PowerTouch introduced in July 2003 and "having functionality similar to that of our LeapPad platform," disclosing that many competitors and potential competitors have longer operating history, brand name recognition, greater financial, technical, and marketing resources, and that LeapFrog "cannot assure you that we will be able to compete effectively in our markets." The complaint alleges that defendants "merely represented that sales and market share '*could*' decline if LeapFrog was unable to compete effectively." One other paragraph discloses LeapFrog's reliance on its sales of the LeapPad platform, stating that if LeapPad sales are below expected sales or do not grow as anticipated and sales of other products do not compensate for such shortfall, "our overall sales would suffer." With respect to this disclosure, the

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS—No. C-03-05421 RMW
SPT                                                                                      2

alleged to be false, there are no factual allegations that show that: (1) any of those particular statements were false when disclosed on August 11, 2003 and (2) that defendants knew on August 11, 2003 that those statements were false.[2] Likewise, the other paragraphs cited to by plaintiffs do not plead factual allegations showing that particular statements were false when disclosed and that defendants knew the particular statement was false when disclosed.

### B. Falsity and Knowledge of Falsity When Statement was Made

At oral argument plaintiffs offered that the pleadings showing the alleged statements were false when made and that defendants knew of the falsity at the time of disclosure are set forth in paragraphs 108 through 174 and in paragraphs 94 through 106. In relooking at each of these paragraphs, the court finds no statements linking any alleged falsity or knowledge of falsity as to any specific statements. For example, the allegations in the almost seventy paragraphs (from 108 through 174) spanning twenty pages purporting to show knowledge of falsity are largely conclusory, vague, made without reference to time, or provide no indication of falsity or knowledge of falsity. For example, plaintiffs allege: "Defendants also knew the shipping problems and the impact of Mattel's PowerTouch on the Company's sales and lack of supply-chain software precluded LeapFrog from accurately forecasting and fulfilling customer orders"; "Other witnesses confirmed that DSS was unable to ship product to the Company's retail customers"; "CW-6 stated that LeapFrog management was unhappy with the degree of oversight required and wanted a warehouse provider that did not require the same level of oversight"; "CW-8 also stated DSS management knew

---

complaint alleges that defendants "merely represented that sales of LeapPad platforms, the product that Mattel's PowerTouch competed with, '*may*' be of particular importance to LeapFrog's financial results '*if*' such LeapPad sales failed to grow as expected." (emphasis in original).

[2] These excerpts are all from defendants' disclosures of "Risk Factors" in its quarterly and annual filing with the SEC and therefore constitute defendants' cautionary language. Plaintiffs appear to assert that the cautionary language do not accurately state the particular risk. To the extent plaintiffs are alleging the risk factors fail to provide adequately meaningful language, plaintiffs' allegations fail to identify which forward-looking statements are not protected by the PSLRA's safe harbor as a result. To the extent plaintiffs are alleging that the risk factors themselves are affirmative misstatements, plaintiffs' allegations fail. In particular, plaintiffs have not shown how their allegations support that the risk factors themselves are false. *See Zeid v. Kimberley*, 930 F. Supp. 431, 437 (N.D. Cal. 1996) ("Defendants' warnings regarding potential adverse factors are not actionable as a matter of law" where plaintiffs were asserting that defendants should have stated that certain adverse factors "are" affecting rather than "may" affect the financial statements.); *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 832 (C.D. Cal. 1998) (plaintiffs could not state a claim that detailed and specific risk factors were "masked as mere contingencies").

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS—No. C-03-05421 RMW
SPT                                                             3

1  LeapFrog had decided to replace DSS with CLI by 11/03"; during the patent infringement trial,
2  Bender "admitted that LeapFrog lost $1.2 million in LeapPad orders from Target and $2.8 million
3  LeapPad orders from Toys 'R Us in 3Q03 because of the inability to ship the product"; "CW-1 and
4  CW-2 stated that LeapFrog cancelled the implementation of the Manugistics software prior to
5  3Q03"; and because the new software was not implemented, "LeapFrog used manually prepared
6  spreadsheets to support its operations."  Plaintiffs also allege that defendants knew in advance of the
7  shortfall for the third quarter of 2003 because Curley attempted unsuccessfully to fabricate sales in
8  the third quarter of 2003 to make up the shortfall by shipping product that Toys 'R Us scheduled to
9  be shipped in the fourth quarter of 2003.[3]

10  For the most part paragraphs 108 through 174 variously describes operational problems
11  encountered by LeapFrog.  For example, plaintiffs make numerous allegations that the delay of the
12  transition to the new supply-chain system and warehouse resulted in the transition occurring during
13  the peak selling season.  Similarly, paragraphs 118 through 122 describe shipping problems at the
14  third-party logistics supplier.  To the extent these allegations are the basis of falsity of any particular
15  statement, the pleadings do not make clear which specific statements are rendered false by which
16  specific factual allegations.  These pleadings are unclear with respect to defendants' knowledge of
17  falsity as to any particular statement, let alone give rise to a strong inference of scienter under the
18  PSLRA.  In paragraph 150 plaintiffs allege that "[a]fter the Class Period, [d]efendants admitted they
19  knew the delay in changing warehouse providers, consolidating warehouses, and implementing
20  supply-chain and warehouse management software would harm the Company's financial results."
21  Defendants stated on October 18, 2004 (the last day of the Class Period) "we have experienced
22  several challenges getting our new distribution center up and running smoothly. . . . [G]etting all this
23  up and running during this peak time has been challenging and we have experienced negative
24  financial ramifications through this transition, ultimately impacting margin."  These statements do
25  not give rise of an inference of scienter as to any prior statements, and the pleadings do not indicate
26  which prior statements, if any, are demonstrated to be false when made by the purported

---

[3]  However, elsewhere in the complaint plaintiffs allege that defendants missed its third quarter 2003 forecasts because it was unable to ship a $12-$13 million Toys 'R Us order for the third quarter.

1  "admission" on October 18, 2004.

2  Paragraphs 65 through 82, which plaintiffs point to as undermining particular statements
3  alleged as false or misleading, simply sets forth twelve confidential witnesses and certain statements
4  purportedly attributed to those witnesses. However, the pleadings do not link the confidential
5  witnesses' statements to any particular statement alleged to be false or misleading to corroborate the
6  allegations of falsity.[4]

7  **C.   Leave to Amend**

8  Finally, at oral argument plaintiffs agreed that "there's no question" that the complaint need
9  not take 147 pages. While plaintiffs supported the length of their complaint with concerns about
10 showing sufficient details to meet the PLSRA's heightened pleading standards, a heightened
11 pleading standard need not translate to a lengthy complaint. *See McHenry v. Renne*, 84 F.3d 1172,
12 1178 (9th Cir. 1996) (noting in another context requiring heightened pleading that "[a] heightened
13 pleading standard is not an invitation to disregard's Rule 8's requirement of simplicity, directness,
14 and clarity" and observing that the court has "affirmed dismissal with prejudice for failure to obey a
15 court order to file a short and plain statement of the claim as required by Rule 8, even where the
16 heightened standard of pleading under Rule 9 applied").

---

[4] At oral argument, plaintiffs' counsel suggested that taking the various cited paragraphs one could "then juxtapose the dates with the statements which will show the knowledge at the particular time." However, the heightened pleading standards of the PSLRA cannot be met by alleging numerous statements and facts and leaving it to the court or defendants to identify which ones are misleading when made and on what basis.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS—No. C-03-05421 RMW
SPT                                                    5

**ORDER**

For the foregoing reasons, the court GRANTS defendants' motions to dismiss with leave to amend as follows:

1. Plaintiffs' consolidated amended complaint is limited to the two grounds of alleged securities fraud represented at oral argument: (i) competition from the PowerTouch and (ii) the supply-chain and distribution problems, absent another ground, if any, being set forth clearly;

2. Plaintiffs' consolidated amended complaint should address the concerns raised by the court in this order and not exceed fifty (50) pages in length; and

3. Plaintiffs have twenty (20) days to amend their complaint.

DATED:   7/31/06

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**United States District Court**
For the Northern District of California

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiffs:**

3  Michael M. Goldberg           info@glancylaw.com
   Laurence D. King              lking@kaplanfox.com
4  Linda M. Fong                 lfong@kaplanfox.com
   Patrick J. Coughlin           patc@mwbhl.com
5  Darren J. Robbins             drobbins@mwbhl.com
   William S. Lerach             billl@mwbhl.com
6  Kimberly C. Epstein           kimcor@mwbhl.com
   Luke O. Brooks                lukeb@mwbhl.com
7  Christopher Paul Seefer       chriss@lerachlaw.com
   David Avi Rosenfeld, Esq.     drosenfeld@geller-rudman.com
8  Nicole Lavallee               nlavallee@bermanesq.com
   Marc S. Henzel                mhenzel182@aol.com
9  Christopher T. Heffelfinger   cheffelfinger@bermanesq.com
   Julie Juhyun Bai              jbai@bermanesq.com
10 Solomon B. Cera               scera@gbcslaw.com
   Gwendolyn R. Giblin           ggiblin@gbcslaw.com

12 **Counsel for Defendant:**

13 Leo Patrick Cunningham        lcunningham@wsgr.com
   Daniel W. Turbow              dturbow@wsgr.com
14 Kassra Powell Nassiri         knassiri@wsgr.com

16 Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 8/1/06                              **SPT**
                                               **Chambers of Judge Whyte**

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS—No. C-03-05421 RMW
SPT                                              7