**E-FILED on     9/29/2008**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re LEAPFROG ENTERPRISES, INC. SECURITIES LITIGATION, <br><br> This Document Relates To: <br><br> ALL ACTIONS. | No. C-03-05421 RMW <br><br> ORDER GRANTING LEAD PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES |

Lead plaintiff Parnassus Fund and Parnassus Equity Income Fund ("The Parnassus Fund" or "Fund") apply for an award of attorney's fees and reimbursement of expenses following the settlement of this class-action securities fraud litigation. The court has received objections to the request for attorney's fees from G. Norman, Natasha L. Engan and the National Automatic Sprinkler Industry Pension Fund, and the Parnassus Fund has responded to these objections. The court has reviewed these papers and considered the arguments of counsel. For the following reasons, the court approves a reimbursement of expenses of $82,343.23 and an award of attorney's fees of $443,531.35.

## I. BACKGROUND

### A. Procedural History Prior to Settlement

The first of these four consolidated cases was filed on December 2, 2003. *See* C-05-05421-RMW, Docket No. 1 (N.D. Cal. Dec. 2, 2003). The court held a hearing to select a lead plaintiff and lead counsel and to decide whether to consolidate the various actions. *See* Docket No. 79 (Mar. 19, 2004). Complications ensued, and the court ended up appointing a different lead plaintiff and lead counsel than it intended at the initial hearing. *See* Docket No. 106 (Mar. 31, 2005). Additional jockeying for lead plaintiff and lead counsel status followed, delaying the litigation. *See* Docket No. 141 (July 27, 2005). Nevertheless, by the end of 2005, the court had selected the Parnassus Fund as lead plaintiff and approved its counsel as lead counsel. *See In re Leapfrog Enterprises, Inc. Sec. Litig.*, 2005 WL 3801587 (N.D. Cal. Nov. 23, 2005). The Parnassus Fund then filed an amended, consolidated class action complaint on January 27, 2006. *See* Docket No. 191.

The defendants promptly moved to dismiss, s*ee* Docket Nos. 194, 195 (Mar. 27, 2006), and the court granted the motions. *In re Leapfrog Enterprises, Inc. Sec. Litig.*, 2006 WL 2192116 (N.D. Cal. Aug. 1, 2006). The Parnassus Fund amended its complaint, the defendants moved to dismiss, and the court again granted the motions. *In re Leapfrog Enterprises, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033 (N.D. Cal. Sept. 30, 2007). The Parnassus Fund filed a Third Amended Consolidated Complaint on November 21, 2007. *See* Docket No. 267.

### B. The Settlement Filings

The parties then reached a settlement and sought preliminary approval. *See* Docket No. 274 (Apr. 18, 2008). After reviewing the terms, the proposed notice form, and the other pertinent details, the court granted preliminary approval and scheduled a fairness hearing for July 18, 2008. *See* Docket No. 276 (May 1, 2008).

The court received no objections to the terms of the settlement and at the hearing remarked that the settlement appeared fair, reasonable and adequate. *See* Docket No. 288 (Jun. 18, 2008) (civil minutes). To accommodate objections to the attorney's fee request, however, the court continued the final approval hearing to September 19, 2008. *See* Docket Nos. 289 (Jun. 25, 208) (scheduling order), 300 (Aug. 21, 2008) (stipulation continuing hearing).

## II.   ANALYSIS

The Parnassus Fund negotiated a settlement of $2,300,000 in cash. The Parnassus Fund's counsel now requests 20% of this gross recovery ($460,000), plus reimbursement of $82,343.23 in expenses.

### A.   The Effect of the Fund's Agreement With Counsel

#### 1.   The Fund's Retention of its Attorneys

When the court appointed the Parnassus Fund as lead plaintiff, it noted that the Fund claimed to have suffered approximately $10 million in damages. *Leapfrog*, 2005 WL 3801587 at *2. The Parnassus Fund therefore retained its attorneys (Cohen, Milstead, Hausfeld & Toll and Berman Devalerio Pease Tabacco Burt & Pucillo), and those attorneys were then selected as lead counsel. *See id.*

In support of the attorney's fee application, Matthew K. Handley (one of the Fund's attorneys from Cohen, Milstead) declares that his firm "seeks a fee award that results from a negotiated agreement with the Lead Plaintiff." Docket No. 285 ¶ 54 (Jun. 11, 2008) ("Handley Decl."). Mr. Handley also states that "Lead Plaintiff has worked with Lead Counsel throughout the prosecution and settlement of the litigation, is familiar with the work done by Lead Counsel, and supports the fee request presently before the Court." *Id.* The declaration does not, however, include a copy of the retainer agreement between the Fund and its attorneys.

In further support of the application, Jerome L. Dodson has filed a declaration. Docket No. 301 (Sept. 11, 2008). Mr. Dodson is the founder and president of Parnassus Investments and the portfolio manager for the Parnassus Fund. *Id.* ¶ 2. Mr. Dodson states that:

> I also decided it best to await the results of the litigation before deciding what was a fair and reasonable fee as I believed the outcome of the case and the time spent by class counsel litigating the case would be factors that I would need to assess. . . . Given all of the circumstances , including the diligent and excellent work of class counsel, I believe a fee of 20% of the Settlement Fund is fair and reasonable to the class, *which is why I agreed to that percentage after the recovery was obtained* and before class counsel submitted their fee petition.

*Id.* ¶ 6 (emphasis added). Based on this, it appears that the Parnassus Fund agreed to retain its counsel, but that it did not agree to any amount of attorney's fees until after the case had settled.

### 2. Analysis

Counsel argues that because the Private Securities Litigation Reform Act ("PSLRA") required the court to select the most appropriate lead plaintiff, the fee arrangement negotiated between that plaintiff and counsel should be entitled to "a presumption of reasonableness." Indeed, courts outside this circuit have held as much. *In re Cendant Corp. Litg.*, 264 F.3d 201, 282 (3d Cir. 2001) (Becker, J.); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004). The *Cendant* court reasoned that such a presumption "ensure[s] that the lead plaintiff, not the court, functions as the class's primary agent vis-a-vis its lawyers." *Id.* The court also explained that a presumption in favor of the lead plaintiff's negotiated fee agreement will make such agreements "more reliable," and that this would "assist those agreements in aligning the interests of the class and its lawyers during the pendency of the litigation." *Id.*

The court does not decide whether or not the Ninth Circuit would follow this approach (though it has some doubts[1]) because the fee here was not negotiated until the conclusion of the case. The *Cendant* court stressed that the basis for its presumption rested on strengthening the "*ex ante* fee arrangements" negotiated between the lead plaintiff and the attorney. 264 F.3d at 282. The *Global Crossing* court also relied on the fact that the fee agreement, between two state pension funds (overseen by the Ohio Attorney General) and counsel, "was negotiated at arm's length before this litigation commenced, when each party operated behind a veil of ignorance regarding how the case would ultimately fare." 225 F.R.D. at 466. This "contingent nature of the recovery, negotiated by the client, served to minimize agency problems by giving counsel an incentive to seek the largest recovery possible." *Id.* Since the basis for reading into the PSLRA a presumption that the lead

---

[1] The court notes that the PSLRA contains a statutory mandate that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). In light of this requirement, it seems unlikely (though not impossible) that Congress intended the courts to then presume that every fee request made by the lead plaintiff's counsel was reasonable because the lead plaintiff and counsel had been appointed pursuant to the PSLRA. *Cf. In re Cavenaugh*, 306 F.3d 726, 733 & fn.13 (9th Cir. 2002) ("An aggressively negotiated fee agreement does not relieve the district court of the responsibility of reviewing the fees actually paid to ensure that they are fair to the class and otherwise meet the Reform Act's standards.").

plaintiff's counsel's fee request is reasonable depends on lead plaintiff and lead counsel negotiating such a fee *ex ante*, any such presumption would not apply in this case.

Indeed, the Seventh Circuit has incorporated this *ex ante* perspective into the requirement that any award of attorney's fees correspond to a "reasonable percentage" of the damages paid to the class. *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). The court explained that where "attorneys' fee had not been determined up front," the court must consider "the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Id.* To that end, courts in the Seventh Circuit look to "(1) actual fee agreements; (2) data from large common fund cases where the parties negotiated the fees privately, and (3) bids and results from class counsel auction cases for insight into the fee levels attorneys in competition were willing to accept." *Id.* at 692 & fn.2.

Despite the appeal of the Seventh Circuit's reasoning, the Ninth Circuit does not appear likely to embrace a rule that fees must be determined on an *ex ante* (or hypothetical *ex ante*) basis. In reversing a trial court's selection of lead plaintiff on the basis that plaintiff had negotiated the lowest percentage contingent fee for his attorney's services as opposed to being the plaintiff with the largest stake in the litigation, the Ninth Circuit explained that the statute requires that the "actual fees paid will be subject to close judicial scrutiny based on counsel's actual work done and results achieved." *In re Cavenaugh*, 306 F.3d 726, 733 (9th Cir. 2002). It was therefore unreasonable for the trial court to rely on the plaintiff's having negotiated a low fee because "negotiations with counsel before lead plaintiff has even been appointed have an inherently hypothetical and contingent quality, making them a relatively poor indicator of plaintiff's adequacy to serve as lead." *Id.* In further explaining the district court's role in approving a request for attorney's fees, the court noted that "at best, such an agreement serves as a cap, because the court will seldom approve a fee award that exceeds the terms of the retainer agreement, but the court has wide latitude to go below the agreed amount in actually awarding fees." *Id.* at 733, fn. 13.

The only other Ninth Circuit case addressing the reasonableness of fees paid to attorneys under the PSLRA is in accord. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). In *Powers*,

the court remarked that the PSLRA "simply requires that the fees and expenses ultimately awarded be reasonable in relation to what the plaintiffs recovered." *Id.* It bears noting, however, that the *Powers* court also held that "[a]lthough the new provision requires reasonable fees and expenses, it does not mandate a particular approach to determining fees." Thus, it is unclear whether *Cavenaugh*'s dictum regarding using retention agreements as a cap on recoveries can be reconciled with *Powers*. Nonetheless, the two cases are harmonious with respect to their emphasis on considering reasonableness *ex post*, i.e., based on what the class recovered. The Ninth Circuit's interpretation of the PSLRA thus seems to require the court to scrutinize attorney's fees requests even if the lead plaintiff and lead counsel have engaged in arms-length negotiations (regardless of when they occurred). Accordingly, the court cannot accept Mr. Dodson's judgment for the court.[2] Whether the 20% fee request is reasonable must be determined based on the work counsel has done and the results they have achieved.

### B. The Work Performed & Counsel's Lodestar

The Handley Declaration states that the Fund's counsel devoted 3,945.60 hours, which works out to $1,685,394.00 when applied to the rates of those who worked on the case. Handley Decl. ¶ 50. To substantiate that figure, Mr. Handley includes two exhibits compiling tables of the work performed by the Fund's two law firms, reproduced below in full:

| NAME (STATUS) | TOTAL HOURS | CURRENT RATE | TOTAL LODESTAR |
|---|---:|---|---:|
| **Partners** | | | |
| S. Toll | 454.00 | $710.00 | $322,340.00 |
| A. Friedman | 0.25 | $575.00 | $143.75 |
| D. Sommers | 5.75 | $575.00 | $3,306.25 |
| **Of Counsel** | | | |
| E. Berney | 1,554.00 | $485.00 | $748,840.00 |
| C. Torrell | 55.25 | $485.00 | $26,796.25 |

---

[2] Of the 3,945.60 hours counsel purportedly spent on this case, 7.00 hours were spent in "discussions with lead plaintiff and class members regarding case." This suggests that, even under the PSLRA, the lead plaintiff may not have meaningfully controlled this litigation

ORDER GRANTING LEAD PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES
No. C-03-05421 RMW
TSF                                                    6

| | | | |
|---|---:|---|---:|
| **Associates** | | | |
| M. Handley | 462.00 | $335.00 | $154,770.00 |
| B. Lehman | 57.75 | $295.00 | $17,036.25 |
| J. Leviton | 43.25 | $315.00 | $13,623.75 |
| **Law Clerks** | | | |
| J.D. Burns | 0.25 | $180.00 | $45.00 |
| **Paralegals** | | | |
| G. Buck | 15.75 | $200.00 | $3,150.00 |
| D. Choi | 2.00 | $175.00 | $350.00 |
| S. Evans | 78.75 | $200.00 | $15,750.00 |
| M. A-Fallon | 80.00 | $175.00 | $14,000.00 |
| K. Fiore | 71.25 | [blank in filing] | $14,250.00 |
| D. Frusco | 14.75 | $140.00 | $2,065.00 |
| P. Macker | 1.00 | $200.00 | $200.00 |
| E. Schulz | 24.75 | $200.00 | $4,950.00 |
| R. Smits | 2.00 | $200.00 | $400.00 |
| E. Takas | 0.50 | $200.00 | $100.00 |
| **Paralegals Assts.** | | | |
| K. Brenner | 14.50 | $155.00 | $2,247.50 |
| C. Sherman | 11.50 | $155.00 | $1,782.50 |
| **TOTAL LODESTAR** | 2,939.25 | | $1,346,146.25 |

| NAME (STATUS) | TOTAL HOURS | CURRENT RATE | TOTAL LODESTAR |
|---|---:|---|---:|
| **Partners** | | | |
| Joseph J. Tabacco, Jr. | 27.40 | $690.00 | $18,906.00 |
| Christopher T. Heffelfinger | 21.50 | $610.00 | $13,115.00 |
| Nicole Lavallee | 227.60 | $610.00 | $138,836.00 |
| Leslie Stern | 2.00 | $460.00 | $920.00 |
| **Of Counsel** | | | |
| Stacey Dana | 0.40 | $420.00 | $168.00 |

ORDER GRANTING LEAD PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES
No. C-03-05421 RMW
TSF

7

| | | | |
|---|---|---|---|
| **Associates** | | | |
| Jay Eng | 1.50 | $345.00 | $517.50 |
| Deborah Evans | 12.00 | $315.00 | $3,780.00 |
| Julie Bai | 281.80 | $265.00 | $74,677.00 |
| Matthew Pearson | 2.50 | $235.00 | $587.50 |
| James Magid | 10.75 | $235.00 | $2,526.25 |
| Kristin Madigan | 3.00 | $200.00 | $600.00 |
| **Paralegals** | | | |
| Deborah Vanore | 104.00 | $210.00 | $21,840.00 |
| Jeannine Scarsciotti | 9.75 | $210.00 | $2,047.50 |
| Jeffrey Gates | 51.00 | $180.00 | $9,180.00 |
| Melroy Atkins | 1.00 | $180.00 | $180.00 |
| Gracynthia Claw | 37.00 | $170.00 | $6,290.00 |
| Anna Hale | 20.00 | $165.00 | $3,300.00 |
| Jacob Strom | 12.50 | $160.00 | $2,000.00 |
| Yelena Soboleva | 79.15 | $80.00 | $6,332.00 |
| **Investigators** | | | |
| Christopher Szechenyi | 100.50 | $330.00 | $33,165.00 |
| Robin Estrin | 1.00 | $280.00 | $280.00 |
| **TOTAL LODESTAR** | 1,006.35 | | $339,247.75 |

*Id.*, Exs. 2 & 3. Based on these billing records, counsel submits that their request amounts to a "negative multiplier." Putting aside nomenclature, counsel's requested fee is purportedly 27% of their "billing."

This lodestar calculation is a helpful "cross-check" on the reasonableness of the requested attorney's fees. *In re Chiron Corp. Secs. Litig.*, 2007 WL 4249902 (Nov. 30, 2007) (Walker, C.J.). But a lodestar calculation is only as reasonable as the numbers that go into it, and a non-exhaustive review of the submissions suggests that this lodestar is inflated.

To begin, counsel's initial submissions do not reveal what the attorneys *did* to justify the large number of hours they billed. This want of information makes it impossible for the court to

ORDER GRANTING LEAD PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES
No. C-03-05421 RMW
TSF         8

gauge the reasonableness of the figures submitted above. The supplemental submissions of Joseph Tabacco and Matthew Handley (docket nos. 295 and 296, filed August 15, 2008) break down each attorney's hours, though into somewhat vague categories. Yet as opaque as the categories are, what they reveal is telling. The Cohen firm alone spent 554.00 hours on "research for and drafting of opposition to motion to dismiss first amended complaint."[3] While the opposition was fifty pages long, this suggests that counsel billed more than 11 hours *per page* of that opposition. The Cohen firm then spent 424.50 hours on "research for and drafting of the opposition to motion to dismiss second amended complaint." While the opposition again totaled fifty pages, it addressed the same issues as the first opposition (whether the statements were actionable, whether a strong inference of scienter had been alleged, and whether loss causation had been alleged). It is difficult to imagine the second opposition required as much research as the first, yet the Cohen firm billed almost as much time on it.

Yet more questionable is that the Cohen firm then spent 257.00 hours on "oral argument of motion to dismiss first amended complaint and preparation for argument." Mr. Toll (who argued the motion) claims to have spent 63.75 hours in preparation for oral argument, while Ms. Berney (who did not argue the motion) claims to have spent another 168.00 hours preparing for the argument. Assuming Ms. Berney can bill 12 hours a day, her records suggest that she spent 14 *days* preparing for an oral argument she did not make. It would have been unreasonable to have spent that much time preparing for argument (especially after the time spent preparing the opposition), leading the court to believe that these time records have been substantially padded.

In addition to inflating the number of hours worked, the "rates" for that work are not reasonable. For example, the Cohen firm's paralegals bill at between $160 and $210 per hour (with one exception). But the prevailing market rate for paralegals in Washington D.C. was about $125 per hour. *Chiron*, 2007 WL 4249902 at *6. Even in New York, the prevailing market rate was only $131.25. *Id.* Nothing in the record explains why, for example, Deborah Vanore's paralegal work

---

[3] The Berman firm did not allocate its time by task, but instead reported lumped categories like "pleadings, briefs and pretrial motions (includes legal research)."

justifies a billing rate 68% above the market rate.

The court sympathizes with the objectors' concerns in light of the issues discussed above. Nevertheless, the court cannot agree with the objectors that this fee request is unreasonable. Even after slashing the number of hours billed and rate charged, the multiplier does not substantially exceed 1, let alone the multiplier of 2 to 3 often deemed reasonable in this type of case. *See Chiron*, 2007 WL 4249902 at *8-*9. The contingent nature of the case created a substantial risk that the Fund's attorneys would recover nothing given the difficulties posed by this case. The relatively small recovery also does not raise concerns that the attorneys have struck a bonanza at the expense of the class. *See id.* In light of these difficulties, a 20% contingency fee "does not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." Accordingly, the court approves a 20% contingency fee in this case.

Though the court agrees with the Fund's counsel's proposed contingency fee, the court cannot agree that the attorneys should recover their fee from the $2,300,000 gross recovery. The court has the discretion to award a reasonable fee based on either a net or gross calculation. *Powers*, 229 F.3d at 1258. While the Ninth Circuit has held that the PSLRA does not *require* the attorney's fee award to be based on the class' net recovery, the court believes this to be the best practice because it bases the attorney's fee on what the class actually receives. It also encourages the counsel to carefully monitor the costs incurred.

The court has reviewed the $82,343.23 in expenses reported by the Fund's counsel, and agrees that they were reasonably incurred in pursuing this case. The court therefore authorizes a reimbursement of $82,343.23 to counsel for their expenses. This results in a net recovery for the class of $2,217,656.77. Applying the 20% contingency fee, the court authorizes an award of attorney's fees of $443,531.35.

//
//
//
//

ORDER GRANTING LEAD PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES
No. C-03-05421 RMW
TSF 10

### III. ORDER

For the foregoing reasons, the court approves a reimbursement of expenses of $82,343.23 and an award of attorney's fees of $443,531.35.

DATED: 9/29/2008

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Michael M. Goldberg | info@glancylaw.com |
| Laurence D. King | lking@kaplanfox.com |
| Linda M. Fong | lfong@kaplanfox.com |
| Patrick J. Coughlin | patc@mwbhl.com |
| Darren J. Robbins | drobbins@mwbhl.com |
| William S. Lerach | billl@mwbhl.com |
| Kimberly C. Epstein | kimcor@mwbhl.com |
| Luke O. Brooks | lukeb@mwbhl.com |
| Nicole Catherine Lavallee | nlavallee@bermanesq.com |
| Julie Juhyun Bai | jbai@bermanesq.com |
| Solomon B. Cera | scera@gbcslaw.com |
| Gwendolyn R. Giblin | ggiblin@gbcslaw.com |
| Matthew K. Handley | mhandley@cmht.com |
| Christopher T. Heffelfinger | cheffelfinger@bermanesq.com |
| David Avi Rosenfeld, Esq | drosenfeld@geller-rudman.com |
| Samuel H. Rudman | srudman@csgrr.com |
| Christopher Paul Seefer | chriss@csgrr.com |

**Counsel for Defendant:**

| | |
|---|---|
| Daniel W. Turbow | dturbow@wsgr.com |
| Kassra Powell Nassiri | knassiri@wsgr.com |
| Leo Patrick Cunningham | lcunningham@wsgr.com |
| Joni L. Ostler | jostler@wsgr.com |

**Counsel for Objectors, Natasha Engan and National Automatic Sprinkler Industry Pension Fund:**

| | |
|---|---|
| John Vincent Komar | jkomar@business-litigation-associates.com |
| Irwin Bennet Schwartz | ischwartz@business-litigation-associates.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 9/29/2008

TSF
**Chambers of Judge Whyte**

United States District Court
For the Northern District of California

ORDER GRANTING LEAD PLAINTIFF'S APPLICATION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES
No. C-03-05421 RMW
TSF                                                                12